THE A. F. WAITE TAXI & LIVERY CO. *v.* McGREW.

*Negligence—Automobiles—Operating at reasonable and proper
speed—Section 12603, General Code—Question for jury—Stat-
utory speed limit not controlling, when—Loss of earnings as
special damages—Evidence—Physical condition of plaintiff—
Acceptance as insurance risk inadmissible, when.*

1. Under the provisions of Section 12603, General Code, limiting
   the speed of motor vehicles, a speed that is reasonable and
   proper must be measured by the circumstances and condi-
   tions the statute specifies, and a speed may be violative of
   the statute although less than the maximum rate named
   therein.
2. Under such statute the question whether the speed at a par-
   ticular point was reasonable and proper is primarily one for
   the jury.
3. In an action for damages for personal injuries loss of earn-
   ings is an item of special damages and must be pleaded to
   entitle a recovery therefor.
4. In such an action where there is an issue as to whether a
   certain physical condition of plaintiff was caused by the ac-
   cident or was a long standing and preexisting physical in-
   firmity, the admission of plaintiff's testimony, that prior to
   the accident he had been examined by a physician for life
   insurance and that a policy had been issued to him, is preju-
   dicial error.
5. Evidence of diminished earning capacity will not warrant a
   finding of damages resulting from loss of time or earnings.

(Decided May 6, 1922.)

ERROR: Court of Appeals for Cuyahoga county.

*Mr. Paul Howland; Mr. Winfield Worline* and *Mr.
George E. Nichols,* for plaintiff in error.

*Messrs. Anderson, Lamb & Osborne,* for defend-
ant in error.

MIDDLETON, J.   On the 16th day of June, 1920, the defendant in error, Abraham D. McGrew, while riding as a passenger from Cleveland to Bedford, Ohio, in one of the cars of the A. F. Waite Taxi & Livery Company, was injured in a collision between the car aforesaid and another machine driven by a third party.   McGrew instituted this action against the taxi company to recover damages for such injuries, which he alleged were approximately caused by the negligence of the taxi company in two particulars, namely: (1) By operating said car at a high and dangerous rate of speed; and (2) By failing in proper time to give the other machine sufficient room to pass.

The case was tried to a jury, which found in favor of McGrew and awarded him damages in the sum of ten thousand dollars.   A motion for a new trial was overruled and judgment was thereupon rendered against the taxi company for the amount aforesaid.   These proceedings are prosecuted to reverse that judgment.

The usual complaints are made here by the taxi company.   It is contended, first, that there was no evidence adduced to support the first ground of negligence claimed, that of excessive speed, and that the court erred in not sustaining a motion to withdraw that assignment of negligence from the consideration of the jury.   If we concede this to be a proper matter of complaint, yet the verdict may have been returned on the other ground of negligence and being general it must stand.   Moreover, evidence was adduced tending to show that the defendant's car was traveling at a rate of speed variously estimated at from seventeen to twenty-five miles an hour.   The collision occurred on a country

road.  Manifestly, under the provisions of Section
12603, General Code, it was a question primarily
for a jury whether such speed at the point of colli-
sion was reasonable and proper.  (*Gibbs* v. *Village
of Girard*, 88 Ohio St., 34.)  It seems, however, to
be the theory of the company, that unless a speed of
thirty miles an hour was reached, no negligence un-
der the provisions of this section may be charged
against it.  We do not so construe this statute.  Un-
der its provisions the rate of speed must be reason-
able and proper, measured by the circumstances
and conditions the statute specifies, and it neces-
sarily follows that this rate must vary according to
such conditions.  A speed of ten miles an hour
might violate the requirements of this section, while
in every case a rate of speed of thirty miles an hour
is made presumptive evidence of negligence.

It appears from the record that the trial court,
at the request of McGrew, before argument, charged
the jury that they might allow full and whole com-
pensation for loss of earnings which they might find
by a preponderance of the evidence he had lost in
the past; and, further, full and whole compensation
for loss of earnings which they might find, by a pre-
ponderance of the evidence, he will with reasonable
certainty lose in the future.  These instructions are
attacked by the company upon two grounds:

(1)  That loss of earnings is an item of special
damages and was not claimed or set up in the peti-
tion.

(2)  That there was no evidence before the jury
tending to prove such loss or showing anything from
which such loss might be inferred.

We will consider first the contention that loss of
earnings is an item of special damages and must be

pleaded to entitle a recovery therefor. It is contended by McGrew that loss of earnings is an item of general damages, that such item is not required to be pleaded to permit a recovery therefor, and that if a claim for loss of earnings was required in the petition it was covered and included in the claim made for decreased earning capacity, which claim was set forth in the petition. It may be well in this connection to quote from the petition the paragraph which sets forth the plaintiff's damages. It is as follows:

"Plaintiff says that by reason of said injuries he has suffered great pain in body and mind, and will continue to so suffer in the future; that his earning capacity has been decreased by reason thereof, and that he believes and alleges that said injuries are permanent and that he has been damaged in the sum of twenty-five thousand dollars, for which, together with costs, he seeks judgment."

It is a fundamental rule of pleading that general damages, or those which naturally and necessarily flow from the injury, are presumed, and need not be pleaded, while special damages must be specially averred to authorize a recovery therefor. Upon the question of whether or not loss of earnings may be presumed from an injury or must be specially averred the courts appear to be confused and more or less divided. In 5 Ency. Pl. & Pr., 753, it is said:

"The courts have been somewhat divided upon the question, whether loss of earnings and loss of capacity to attend to business affairs are matters which require a special averment to recover therefor. But it seems upon principle that such allegation would ordinarily be required."

In support of this text, cases are cited from the

states of Colorado, Kentucky, Illinois, Massachusetts, Michigan and Missouri. This text, however, is followed by this observation, page 755 of the same volume:

"On the other hand, the doctrine has been laid down that loss of earnings and of business engagements is a necessary result of personal injuries, and hence need not be specially pleaded."

In this connection citations are made from the courts of Texas, New York and Washington, from the United States supreme court, and from Wisconsin.

The same subject is discussed in 4 Sutherland on Damages, Section 1247, where many authorities also are cited, with the observation that they are not in accord. No Ohio authority directly bearing upon the question appears to be available. In 2 Nash's Pleading & Practice (5 ed.), Section 832, it is said:

"General damages are such as necessarily flow from the wrong or injury, or from a violation of a contract; special damages are such as are incidental to the general damages * * * incidental damages are the loss of time, sums paid for doctors' and nurses' bills in taking care of the party."

As loss of time and loss of earnings ordinarily mean the same thing, it would seem that this Ohio authority, at least, is committed to the proposition that loss of earnings is an item of special damages. We are inclined to support this view. Loss of earnings may be a necessary consequence of an injury, and it may not. If the injured party alleges definite earnings at the time of the injury and describes his injuries in such a manner as to plainly indicate that they are permanent, and that they resulted in a disability which would, and did, incapacitate him

from following his employment, a special averment as to loss of earnings would not under such circumstances be required. But these facts do not appear in the pleading in the instant case. It is said in *Mellor* v. *Missouri Pacific Ry. Co.,* 105 Mo., 455, 462:

"Loss of earnings is a kind of injury which is not regarded as a necessary consequence of such acts as are complained of here, and, therefore, is not embraced within the plaintiff's general allegations of damage. It is one sort of special damages * * *."

In *Campbell* v. *Chillicothe,* 175 Mo. App., 436, it is said, at page 439:

"Loss of earnings is a special damage which must be specially pleaded and proved and in the cases cited the rule is applied that prohibits a recovery on account of such damages from exceeding the sum alleged in the petition."

As before observed, there is nothing set forth in the petition in respect to any employment of the plaintiff or specifying what his earning capacity might be, and nothing is alleged therein from which a loss of earnings might be inferred except the allegation of decreased earning capacity. Does this averment include a claim for loss of earnings? In this connection it may be observed that there is no evidence before the jury of the amount of plaintiff's earnings either prior or subsequent to the injury. The only evidence in any manner reflecting upon either loss of earnings or diminution of earning ability was the following evidence taken from plaintiff's testimony (Record, page 65):

"Q. Have you been employed anywhere, or have you performed any work since the day of this accident, Mr. McGrew? A. No, sir, I have not.

"Q. Why? A. Due to the fact I am not able to get around the way I formerly could."

Of course, there was evidence adduced tending to show the extent of plaintiff's injuries, and whether permanent or not, that the plaintiff at the time of his injuries was acting as an agent for a realty company and that prior to that time he had worked in various capacities. Diminished earning capacity is a disability which is entirely distinct from the damage resulting from loss of time or loss of earnings. While loss of earnings might be, under some circumstances, an item by which decreased earning capacity could be measured, it is not by any means the same thing. If loss of earnings and diminished earning capacity meant the same thing, then an injured party, who might be able at some particular work to earn higher wages after the injury than he had received in another line of work prior to his injury, would be precluded entirely from claiming damages for decreased earning capacity. This would be so notwithstanding the fact that his general ability and efficiency to do any or all kinds of work were wholly impaired. This is not the law. (6 Thompson on Negligence, Section 7299.) Loss of earnings in the past ordinarily ought to be a claim susceptible of some definite proof. It implies, necessarily, a specific or certain amount of money. In the instant case, as before observed, no evidence was offered bearing directly upon the question as to the amount of earnings the plaintiff had lost from the date of his injury to the time of the filing of his petition. There was no evidence of his earnings at the time of the injury, or what it might reasonably be expected he would earn from that time to the commencement of the action. In the instant case,

at least, we are unable to say that loss of earnings "in the past" was one of the necessary results of the injury complained of. It was, therefore, an item of special damages which should have been specially pleaded and proved, and the finding of the jury thereon limited to the amount so claimed for such loss.

In the instruction as to future loss of earnings the trial court evidently intended that instruction should cover the claim for decreased earning capacity, as no instruction on the latter claim was given either before argument or in the general charge. If it was so understood by the jury, and the jury limited the amount they allowed for diminution of earning capacity solely to the amount they found due for future loss of earnings, no prejudice could result to the company. However, no loss of future earnings was shown with reasonable certainty. Moreover, if the jury allowed for such loss of future earnings, and also allowed for decreased earning capacity, it would amount to a double allowance, for the reason that compensation for the loss of future earnings must end when compensation for the impairment of earning capacity begins. (*Blue Grass Traction Co.* v. *Ingles,* 140 Ky., 488.) This instruction, therefore, was improper unless limited as above indicated.

McGrew claimed to have received certain injuries which in ordinary language may be described as injuries to the left arm, shoulder and spine. At the date of the trial he had apparently fully recovered from such injuries, except the injury to his spine, and on the question of the cause, character and permanency of this injury, and its effect on his future health, the real conflict between the parties was

staged.  He contended that this injury was permanent and would seriously impair his future health and physical abilities.  The company, on the other hand, claimed that the condition of his spine was not caused by the accident, but was of long standing and a preexisting physical infirmity.  It therefore became a decisive question whether his alleged injury to his spine was the proximate result of the collision or due to other and preexisting causes.

When McGrew testified he was asked, over the objection of the company, if he had submitted to any physical examination by a physician shortly prior to the accident.  To this inquiry he was permitted to answer, in substance, that four or five months before the accident he had been examined for a policy of life insurance.  Thereupon the following question was asked, which the court permitted him to answer, the company again objecting:

"Q.  And was a policy of insurance issued to you by an insurance company?"

To which question he answered: "Yes, sir."

The admission of this testimony, in view of the particular controversies in the trial, was wholly improper and of the most damaging character to the company.  It was equivalent to saying to the jury that an insurance company, through its medical department, had pronounced the witness physically fit and acceptable as an insurance risk.  It was hearsay evidence, and because of its source must have had a great influence on the jury in determining the controversy over McGrew's physical condition prior to the accident.  The admission of this testimony alone requires a reversal of the judgment.

In view of these considerations, it becomes unnecessary to refer to the claim of an excessive ver-

dict.   We regard the verdict as very large, but due probably to unwarranted allowances on the claim for loss of earnings.

The negligence of the company was sufficiently shown.   We do not disturb the verdict upon that ground.

For the reasons above stated, the judgment must be and is reversed, and the cause is remanded for further proceedings according to law.

*Judgment reversed and cause remanded.*

SAYRE, P. J., and MAUCK, J., concur.

Judges of the Fourth Appellate District, sitting in place of Judges VICKERY, INGERSOLL and SULLIVAN of the Eighth Appellate District.